IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT KIRK HALL, | : | |
| Plaintiff, | : | |
| vs. | : | CA 06-0715-BH-C |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. This action has been referred to the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, and the Commissioner's proposed report and recommendation,[1] it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not

---

[1]    By order dated June 22, 2007, the undersigned *sua sponte* cancelled the oral argument in this case previously set for June 27, 2007 in Selma, Alabama. (Doc. 17)

inconsistent with this decision.

Plaintiff alleges disability due to schizoid personality disorder and depression. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.    The claimant has the following severe impairments: depression and alcohol dependence (20 CFR 404.1520(c) and 416.920(c)).** On January 24, 2003, the claimant was diagnosed with alcohol dependence with physiological dependence (Exhibit 3F). On June 16, 2004, he was diagnosed with major depressive disorder (Exhibit 3F). The claimant was also diagnosed with mild mental retardation and schizoid personality disorder; however, these diagnoses are not supported by subjective (sic) evidence. For example, on February 18, 2003, Dr. Hoke, psychologist, performed psychological testing that reflected low average intellectual functioning. More specifically, Dr. Daniel Hoke, psychologist, performed an evaluation of the claimant on February 18, 2003. The claimant obtained a Verbal IQ of 87, a Performance IQ score of 81 and a Full Scale IQ score of 84 (Exhibit 1F). The claimant received psychological treatment from 2003 to 2005 and there was no diagnosis of mental retardation (Exhibit 3F and 4F). During recent testing with Dr. Goff, the claimant obtained scores that places him in the low average range of intellectual functioning (Exhibit 6F). Additionally, the claimant stated that he graduated from high school without repeating any grades. He has also worked at a paint factory for many years. Thus, mild mental retardation is not accepted as a valid assessment of the claimant's intellectual functioning. The diagnosis of schizoid personality disorder is also inconsistent with other substantial evidence of record. For instance, the claimant has received about three years of mental health treatment and no such diagnosis has been made. The claimant was also evaluated by Dr. Hodo, who found his thoughts to be logical with no perceptual distortions. Thus, I do not accept schizoid personality disorder as an impairment. As

noted below, I find that the depression alone results in only moderate limitations in restriction of daily living, difficulties in maintaining social functioning and deficiencies of concentration, persistence, or pace. On the other hand, the claimant's depression in combination with alcoholism is considered severe and results in significant limitations on the claimant's ability to perform basic work activities.

In the application for disability, he alleged disability due to depression. He made no allegations of physical impairments and there was no evidence that suggested such. Thus, I find no physical impairments.

**4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)). Dr. Garner testified that the claimant does not meet the requirements of any listing, particularly that of Medical Listings 12.04 and 12.06.**

**5.     After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorder(s), the claimant has the residual functional capacity to perform less than a full range of work with substance use.**

Although the claimant does suffer from a mental impairment, alcohol abuse is material to a finding of disability. By the claimant's own testimony, it appears that he lost his job due to alcohol abuse. He stated that his alcohol usage caused problems because he received a DUI ticket, which led to him being fired from work. In fact, he testified that he has had five DUI's, but had not missed work until the last one (January 2003). He then became depressed and could not concentrate. West Alabama Mental Health Center records show treatment of the claimant from January 24, 2003 to Ma[]y 17, 2004 (Exhibit 3F). The claimant was treated for alcohol dependence will (sic)

physiological features. On January 27, 2003, he was diagnosed with alcohol induced mood disorder.

The claimant is found to be less than fully credible. For example, during his hearing, he testified that he has not had any alcohol since being in jail for DUI. During his treatment with West Alabama Mental Health Center he reported that he had stopped drinking and he was found to be in remission on May 19, 2004 (Exhibit 3F). However, during his examination with Dr. Hodo, he reported that he still drinks a couple of beers every once in a while (June 2005) (Exhibit 5F). Dr. Hodo stated that he lacked some insight in regards to his use of alcohol and is [in] need for further treatment of depression.

Although the claimant was diagnosed with major depression, during the evaluation, he demonstrated logical thoughts, intact sensorium and no suicidal ideation. He did serial sevens and abstraction quite well. Dr. Hodo found the claimant to be markedly limited in understanding, carrying out and remembering detailed or complex instructions and ability to respond appropriately to co-workers, customers or other members of the general public. In considering the major depression alone Dr. Hodo's assessment is completely inconsistent with objective evidence of his own evaluation; however, his analysis would appear to be consistent with the diagnosis of depression in combination with alcoholism. Specifically, he noted that the claimant's mood was mildly depressed, his affect was appropriate and his thoughts logical. Despite reports of decreased energy and sleep, the claimant reported that he hunts and cuts the grass. Additionally, he indicated that he no longer takes his medication or attends mental health treatment. I do accept Dr. Hodo's marked limitations based on a diagnosis of depression in combination with alcoholism; however, in considering his depression alone, he is found to suffer from no more than moderate limitations. I further note that Dr. Garner (medical expert) testified that the claimant was treated for depressive anxiety, but he was reported to be doing well.

4

I give substantial weight to the testimony of Dr. Garner and the assessments of Drs. Hok[e] and Hodo, as they are basically consistent mental health treatment records.

The assessment of Dr. John Goff, clinical neuropsychologist, is given very little weight, as the assessment is with other evidence of record. His finding of average intellectual functioning [] is given great weight, as it appears to be consistent with other evidence of record. His diagnosis of schizoid personality disorder and the resultant marked limitations is given little weight, as it is inconsistent with other evidence of record including mental health records, Dr. Hodo's assessment and the testimony of Dr. Garner.

**6.      The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a production worker. He testified that he was fired due to a DUI. That in turn caused him to become depressed with decreased concentration. Accordingly, with substance use, the claimant is unable to perform past relevant work.

**7.      The claimant was born on August 11, 1963, and was 40 years old on the alleged disability onset date, which is defined as a younger individual 18-44 (20 CFR 404.1563 and 416.963).**

**8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      Transferability of job skills is not an issue because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

Dr. McClanahan classified his past work as unskilled.

5

**10.    Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations from all of the impairments, including the substance use disorder. To determine the extent of erosion of the occupational base of unskilled work at all exertional levels caused by these limitations, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors there are no jobs in the national economy that the individual could perform.

Based on the vocational expert's testimony, the undersigned concludes that, considering all of the claimant's impairments, including the substance use disorder, the claimant is unable to make a successful vocational adjustment to work that exists in significant numbers in the national economy. A finding of "disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11.    If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.** If the claimant's substance use was stopped, he would continue to suffer from depression, but at a level which would not render him totally disabled.

**12.    If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work with no more than moderate limitations.**

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p and 96-6p.

If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. For example, on November 11, 2003, his anxiety and depression

were shown as improved. He was diagnosed with adjustment disorder, mixed depression and anxiety on May 19, 2004, but he reported that he had been without medication since December 2003. On October 15, 2004, he reported that he was doing better. On February 27, 2005, the claimant reported few depressive symptoms. He stated that his medication was working better and he was hunting as a means to manage stress. On March 14, 2005, the claimant described his depressive symptoms as one to two on a scale of one to ten. He also denied any anxiety and panic attacks. Thus, if claimant's substance use was stopped, he would be no more than moderately limited in restriction of daily living, difficulties in maintaining social functioning and deficiencies of concentration, persistence, or pace. This is based on treatment records, the evaluations of Drs. Hok[e] and Hodo, the testimony of Dr. Garner and the claimant's testimony.

If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

**13.    If the claimant stopped the substance use, the claimant would be able to perform past relevant work as assembler. This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use (20 CFR 404.1565 and 416.965).** Dr. Garner opined that the claimant's symptoms are controlled with medications. During his evaluation with Dr. Hodo, the claimant described his mood as mildly depressed. Dr. McClanahan indicated that [] based on Dr. Garner's testimony and the residual functional capacity assessment of no more than moderate limitations, as noted above, the claimant would be able to perform his past job as an assembler. In comparing the residual functional capacity the claimant would have if he stopped the substance use with the physical and mental demands of this work, the undersigned

8

finds that the claimant would be able to perform it as actually and generally performed.

**14.     Because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(f) and 416.920(f)), the claimant's substance use disorder(s) is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time through the date of this decision.**

(Tr. 22-26) The Appeals Council affirmed the ALJ's decision (Tr. 4-6) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in

9

the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Court is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform his past relevant work as an assembler, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

Although the claimant bears the burden of demonstrating the inability to return to his past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform his past relevant work. They are as follows:

1.     Whether the claimant retains the capacity

---

[2]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[3]

2.      Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

3.      Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[4]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that he retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

In this case, the ALJ has relied upon test three above to determine that the claimant can perform his past relevant work as an assembler. (*See* Tr. 25

---

[3]      As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[4]      The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

& 25-26 ("**If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work with no more than moderate limitations. . . . If the claimant stopped the substance use, the claimant would be able to perform past relevant work as assembler. This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use (20 CFR 404.1565 and 416.965).** Dr. Garner opined that the claimant's symptoms are controlled with medications. During his evaluation with Dr. Hodo, the claimant described his mood as mildly depressed. Dr. McClanahan indicated that [] based on Dr. Garner's testimony and the residual functional capacity assessment of no more than moderate limitations, as noted above, the claimant would be able to perform his past job as an assembler. In comparing the residual functional capacity the claimant would have if he stopped the substance use with the physical and mental demands of this work, the undersigned finds that the claimant would be able to perform it as actually and generally performed."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be

made that the plaintiff can perform his past relevant work.  Social Security

Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful

consideration of the interaction of the limiting effects of the person's

impairment(s) and the physical and mental demands of his . . .   PRW to

determine whether the individual can still do that work." *See also Lucas v.

Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion

that a claimant "is able to return to her past work, the ALJ must consider all

the duties of that work and evaluate her ability to perform them in spite of her

impairments").

> The RFC to meet the physical and mental demands of jobs a
> claimant has performed in the past (either the specific job a
> claimant performed or the same kind of work as it is customarily
> performed throughout the economy) is generally a sufficient
> basis for a finding of "not disabled."

>                              .      .      .

> The decision as to whether the claimant retains the functional
> capacity to perform past work which has current relevance has
> far-reaching implications and must be developed and explained
> fully in the disability decision.  Since this is an important and,
> in some instances, a controlling issue, every effort must be made
> to secure evidence that resolves the issue as clearly and
> explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the
> decision.  Any case requiring consideration of PRW will contain
> enough information on past work to permit a decision as to the
> individual's ability to return to such past work (or to do other

> work). Adequate documentation of past work includes factual
> information about those work demands which have a bearing on
> the medically established limitations.   Detailed information
> about strength, endurance, manipulative ability, mental demands
> and other job requirements must be obtained as appropriate.
> This information will be derived from a detailed description of
> the work obtained from the claimant, employer, or other
> informed source. Information concerning job titles, dates work
> was performed, rate of compensation, tools and machines used,
> knowledge required, the extent of supervision and independent
> judgment required, and a description of tasks and
> responsibilities will permit a judgment as to the skill level and
> the current relevance of the individual's work experience.

SSR 82-62.   In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

Plaintiff contends that the ALJ made the following errors: (1) he erred in failing to consider Listing 12.08; (2) he erred in rejecting the opinion of Dr. John R. Goff; and (3) the Appeals Council erred in failing to remand the case in light of the additional psychiatric evidence submitted to it. Because the undersigned agrees with the plaintiff that the ALJ erred in rejecting the diagnosis and opinion of Dr. John R. Goff, it is found that the ALJ's

14

determination that plaintiff retains the residual functional capacity to return to his past relevant work as an assembler is not supported by substantial evidence.[5]

Hall was consultatively examined by Dr. John R. Goff on January 31, 2006. (Tr. 187-191; *see also* Tr. 192-193)  Goff's assessment reveals that the clinical neuropsychologist reviewed documentation from the West Alabama Mental Health Center from 2003-2004 and the psychological evaluations from Drs. Dan Hoke and David Hodo (Tr. 187) and performed numerous psychological assessments, "including administration of the Wechsler Abbreviated Scale of Intelligence (WASI), the Reitan-Indiana Aphasia Screening Test, informal clock drawings and the second edition of the Minnesota Multiphasic Personality Inventory (MMPI-II)." (Tr. 189) In addition, Goff considered Hall's history and his own behavioral and mental status observations (Tr. 188-189) before concluding that plaintiff suffers from a schizoid personality disorder, as well as alcohol dependence in long-term remission (Tr. 191).

The ALJ rejected Goff's diagnosis of schizoid personality disorder. (Tr.

---

[5]     Because the ALJ's error in this regard provides a sufficient basis to reverse the ALJ's decision, this Court need not directly address plaintiff's other assignments of error. *See Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

22) "The diagnosis of schizoid personality disorder is also inconsistent with other substantial evidence of record. For instance, the claimant has received about three years of mental health treatment and no such diagnosis has been made. The claimant was also evaluated by Dr. Hodo, who found his thoughts to be logical with no perceptual distortions. Thus, I do not accept schizoid personality disorder as an impairment." (Tr. 22)

It is clear in this circuit that "'although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Lewis v. Massanari,* 176 F.Supp.2d 1283, 1284 (S.D. Ala. 2001), quoting *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. 1981); *see also Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983) ("[T]he [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion.").

There can be no doubt, as aptly described by the medical expert at the hearing, that plaintiff has a "history of counseling and medication management at West Alabama Mental Health Center beginning in 2003 to 2005." (Tr. 232) That plaintiff was never diagnosed by anyone at that center with schizoid personality disorder is simply not dispositive of the issue of whether such

diagnosis is appropriate both because Hall was primarily followed by non-physician counselors at West Alabama (*see, e.g.,* Tr. 104, 106, 108-111, 114-160, 162-172 & 175-178) and because the one psychiatrist who occasionally assessed plaintiff at West Alabama performed none of the testing Dr. Goff performed and made no findings directly contrary to the diagnosis reached by Goff (*see, e.g.,* Tr. 105, 107, 173 & 179). It goes without saying that an individual can suffer from more than one mental disorder at the same time and that the failure of one psychiatrist to make a specific diagnosis that a neuropsychologist makes does not undermine the latter's diagnosis particularly where, as here, the clinical testing and observations of the examining neuropsychologist are in no manner contrary to his diagnosis. Moreover, Dr. Hodo's findings that Hall's thoughts were logical and that he had no perceptual distortions are not contrary to Goff's diagnosis given, again, that Hodo did not perform the clinical testing that Goff performed and the fact that Goff himself noted no perceptual distortions. Goff's diagnosis of a schizoid personality disorder is grounded upon the noted characteristics of "withdrawal, a lack of interpersonal relationships and some rather unusual or strange and eccentric thinking[,]" (Tr. 190), most of which were tangentially noted by Dr. Hodo (Tr. 182 ("His activities are limited. He does hunt and cut the grass. He

17

doesn't seem to have much other interest. His interest seems to be within his family unit. He seems to have little motivation to seek further social contacts.")). Accordingly, the undersigned cannot find that the clinical findings of Dr. Hodo are in any way inconsistent with Dr. Goff's diagnosis.

In light of the foregoing, the Magistrate Judge recommends that the Court find that the ALJ improperly rejected the diagnosis of Dr. Goff. On remand, the ALJ must consider Hall's schizoid personality disorder and how the limitations associated with that condition impact plaintiff's ability to do his past relevant work or other work existing in significant numbers in the national economy.[6]

---

[6]      The undersigned would also note another error committed by the ALJ, albeit not raised by plaintiff, that counsels remand of this case. The vocational expert (VE) clearly indicated during the administrative hearing that an individual with marked limitations in his ability to respond appropriately to co-workers, customers or other members of the general public, as indicated by Dr. Hodo (Tr. 184), would likely be unable to perform any work (Tr. 244). In reaching the conclusion that plaintiff could perform his past relevant work as an assembler in a paint factory (Tr. 25), the ALJ relied upon the VE's testimony that an individual with moderate mental limitations could perform such work (Tr. 243) and attributed to the medical expert, Dr. Sydney Garner, testimony establishing that Hall experiences only moderate mental limitations (id.). A review of Garner's testimony, however, fails to reveal that the expert attributed only moderate mental limitations to Hall; instead, Garner merely testified that he felt that Dr. Hodo had overstated Hall's mental limitations (Tr. 234 ("Dr. Hodo also provided a MRFC, [in] which he gave marked impairments in functioning, moderate to marked in many areas. This appears to be a significant overstatement based on Dr. Hodo's report that the Claimant stated he was experiencing only mild levels of depression. Also appears to be a significant overstatement based on his cognitive ability as evidenced by his IQ scores in 2003. For departmental evaluation I considered a 12.04 and 12.06 listing due to his adjustment disorder with features of anxiety and depression. It does not appear that he would meet or equal either of those listings.")). Subsequently, Garner backed off this testimony somewhat by acknowledging

## CONCLUSION

The Magistrate Judge recommends that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's

jurisdiction over this matter.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

---

that Dr. Hodo's diagnosis of major depressive disorder was consistent with a June 16, 2004 diagnosis from West Alabama Mental Health Center of major depressive order. (Tr. 234-235) Certainly, Garner never specifically quantified Hall's mental limitations as moderate (*see id.*) nor, in fact, is there any documentary evidence in the record from a treating or examining source which establishes that plaintiff's mental limitations are moderate "across-the-board" on account of his mental impairments (*compare* Tr. 184-185 *with* Tr. 192-193). Accordingly, there is no evidence of record, much less substantial evidence, which establishes that Hall experiences only moderate mental limitations on account of his mental impairments and, therefore, no substantial support for the determination that those limitations would allow plaintiff to perform his past relevant work as an assembler in a paint factory.

19

**DONE** this the 12th day of July, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED   STATES   MAGISTRATE   JUDGE